**In re Anonymous No. 89 D.B. 90**

Disciplinary Board Docket No. 89 D.B. 90.

*Hearing Committee,* July 26, 1991—Hearing Committee [    ] issues this report and recommendations after hearing the evidence of the charges of misconduct of [respondent], and after hearing the evidence relevant to the matter of discipline.

## BRIEF SUMMARY

On August 7, 1990, a petition for discipline was filed with the Disciplinary Board involving three consolidated charges, all of which relate to a pattern of conduct involving neglect of legal matters entrusted to respondent and failure to communicate with clients. A hearing was held on November 27, 1990, before Hearing Committee [    ] on the issues of the disciplinary rules violated and the discipline to be imposed. The first charge of the petition involved respondent's neglect of his court-appointed representation of [A] and respondent's failure to file an appellate brief for [A]. Respondent's failure to pursue [A's] interests in his criminal matter allegedly violated D.R. 1-102(A)(5); 6-101(A)(2) and (3); and 7-101(A)(1); and RPC 1.3 and 8.4(d).

The second charge involved respondent's court-appointed representation of [B] in his criminal appeal. Respondent failed to file a petition for allocatur nunc pro tunc to the Supreme Court of Pennsylvania. Respondent's

failure to pursue [B's] appellate rights allegedly violated D.R. 1-102(A)(5); 6-101(A)(3); and 7-101(A)(1), (2) and (3).

The third charge involved respondent's court-appointed representation of [C] in his criminal appeal. Respondent failed to file a brief for [C's] appeal, which resulted in the dismissal of [C's] appeal. Respondent's failure to pursue [C's] appellate rights allegedly violated RPC 1.1, 1.2(a), 1.3, 3.2 and 8.4(d).

The issue is whether respondent's failure to pursue his client's appellate rights, failure to communicate with his clients, and neglect of legal matters warrants a finding of a violation of the various Disciplinary Rules and Rules of Professional Conduct alleged by the Disciplinary Counsel.

The Hearing Committee concludes that respondent violated Disciplinary Rules 1-102(A)(5); 6-101(A)(2) and (3); 7-101(A)(1), (2) and (3) and Rules of Professional Conduct 1.1, 1.2(a), 1.3, 3.2 and 8.4(d) and recommends that respondent receive a private reprimand without probation.

## STATEMENT OF CASE

By notice dated June 25, 1986, the court appointed respondent to represent [A] in litigating claims raised under the Post-Conviction Hearing Act. On July 29, 1986, respondent attended a pre-hearing conference and entered his appearance. Although [A] was incarcerated at the State Correctional Institution at [    ], respondent did not notify [A] of his appointment. Respondent also failed to have [A] brought to [    ] for an interview. As a

result, respondent's first contact with [A] occurred on December 10, 1986, five and one-half months after the appointment, notwithstanding that [A], by letter dated November 6, 1986, requested that respondent contact him for consultation.

Not knowing that respondent had been appointed to represent him, [A] sent to the trial judge letters dated July 28 and September 29, 1986, therein requesting appointment of counsel.

On December 10, 1986, the matter was continued to January 16, 1987, in order to give respondent an opportunity to file an amended PCHA petition. Although [A] sent a letter to respondent requesting that respondent file the amended PCHA petition as soon as possible in order to expedite the matter, respondent did not file an amended petition on or before January 16, 1987. Respondent also failed to file the amended PCHA petition by the next court listing of January 29, 1987. Respondent did not file the amended petition until February 4, 1987. By his own admission, respondent also failed to comply with the PCHA court's April 6, 1987, order directing respondent to file particulars.

It is alleged that Disciplinary Rules 1-102(A)(5); 6-101(A)(2) and (3); and 7-101(A)(1), and Rules of Professional Conduct 1.3 and 8.4(d) were violated.

By notice dated May 1, 1987, respondent was court-appointed to represent [B] in his appeal to Superior Court from the PCHA court's denial of his PCHA petition. Respondent filed a timely brief. By memorandum opinion filed January 14, 1988, a panel of the Superior Court held that trial counsel was ineffective for failing to advise

[B] of his right to file a petition for allocatur with the Pennsylvania Supreme Court, and granted [B] leave to file a petition for allocatur nunc pro tunc to the Supreme Court of Pennsylvania. Respondent knew that [B] wished to file a petition for allocatur nunc pro tunc to the Supreme Court, because that was one of the grounds in which [B] requested relief from the Superior Court. Respondent had 30 days, or until February 14, 1988, to perfect [B's] direct appeal rights by filing the petition for allocatur nunc pro tunc.

By letter dated January 25, 1988, [B] requested that respondent file a petition for allocatur to the Supreme Court. Respondent failed to file the petition for allocatur nunc pro tunc to the Supreme Court, thereby unilaterally ending [B's] direct appeal process without consulting with, or obtaining the consent of [B].

It is alleged that Disciplinary Rules 1-102(A)(5); 6-101(A)(3); and 7-101(A)(1), (2) and (3) were violated.

On February 6, 1989, [C] filed a pro se appeal to Pennsylvania Superior Court. By notice dated March 29, 1989, the court appointed respondent to represent [C]. Despite the fact that respondent also received a criminal docketing statement and a notice of briefing schedule from the Superior Court prothonotary, respondent did not open a file and failed to obtain and review the trial record. Respondent also failed to contact [C] to advise him of his appointment or to discuss with him the issues pertaining to his appeal. Respondent failed to file a brief, which resulted in the dismissal of [C's] appeal.

It is alleged that Rules of Professional Conduct 1.1, 1.2(a), 1.3, 3.2 and 8.4(d) were violated.

## FINDINGS OF FACT

(1) On or about June 4, 1986, [A] filed a pro se petition under the Post Conviction Hearing Act in the Court of Common Pleas of [ ] County following his conviction at nos. [ ] and [ ], November Term, 1982.

(2) By notice dated June 25, 1986, the Honorable [D] appointed respondent to represent [A] and notified respondent that, pursuant to Pa.R.Crim.P. 318 (subsequently renumbered 316), the appointment was "not transferable and [was] effective from the time of appointment, through and including appeals, to the highest appellate state court, including new trials, if any."

(3) The notice dated June 25, 1986, advised respondent that he was required to appear for a conference on July 29, 1986, in Room [ ] [ ] at which time respondent would be furnished with a certificate of readiness and the post-conviction procedure would be explained to him.

(4) The then-in-effect and current procedure in [ ] County was and is that upon the request of a PCHA petitioner's attorney, the PCHA Unit of the Court of Common Pleas will issue a writ to have a prisoner brought to [ ] for an interview if the prisoner is incarcerated in an institution located outside of [ ] County other than the State Correctional Institution at [ ].

(5) Respondent did not notify [A] of his appointment.

(6) Respondent attended the July 29, 1986, conference.

(7) By order for appearance dated July 29, 1986, respondent entered his appearance on behalf of [A].

(8) Respondent did not request that the PCHA Unit of the Court of Common Pleas issue a writ to have [A] brought to [ ] for an interview or to make any ar-

rangements to interview [A] within a reasonable time after his appointment.

(9) By notice dated September 29, 1986, which was received by respondent, the Honorable [E], PCHA judge, notified respondent that a status listing was set for October 29, 1986, and that [A] would not be brought down for the status listing.

(10) Respondent did not interview [A] prior to the October 29 listing, which resulted in the matter being continued on October 29, 1986, to December 10, 1986.

(11) By writ of habeas corpus dated October 29, 1986, Judge [E] directed the superintendent of the State Correctional Institution at [    ] to bring [A] to the [    ] County Prison on December 5, 1986, in order that [A] could be detained there through December 12, 1986.

(12) By letter dated November 6, 1986, which was received by respondent, [A] requested that respondent file an amended PCHA petition and contact him at the State Correctional Institution at [    ] in order that [A] could consult with respondent regarding the representation.

(13) Respondent did not contact [A] or interview [A] in advance of the December 10 court listing.

(14) On December 4, 1986, the [    ] sheriff transported [A] to the [    ] County Prison.

(15) On December 10, 1986, respondent interviewed [A] in the cell room at [    ].

(16) After the interview, respondent went to the courtroom and requested that the case be continued in order to give respondent an opportunity to file an amended

PCHA petition, and the case received a new court date of January 16, 1987.

(17)  By notice dated December 10, 1986, which was received by respondent, Judge [E] notified respondent of the January 16, 1987, court date.

(18)  On December 17, 1986, the [    ] sheriff returned [A] to the State Correction Institution at [    ].

(19)  By letter dated December 19, 1986, which was received by respondent, [A] requested that respondent file the amended PCHA petition as soon as possible in order to expedite the matter.

(20)  Respondent did not file an amended PCHA petition on or before January 16, 1987, which resulted in the case being continued to January 29, 1987.

(21)  By notice dated January 16, 1987, which was received by respondent, Judge [E] notified respondent that the case had been continued to January 29, 1987.

(22)  On January 29, 1987, respondent or his agent represented to the court that respondent was ill, and the case was continued to February 4, 1987.

(23)  By notice dated January 29, 1987, which was received by respondent, Judge [E] notified respondent that the case had been relisted for February 4, 1987.

(24)  On February 4, 1987, respondent filed with the PCHA court an amended PCHA petition and memorandum of law in support thereof, and the case was continued to April 6, 1987.

(25)  Respondent served [A] by mail with a copy of the amended PCHA petition and memorandum of law in support thereof.

(26) At a hearing on April 6, 1987, which respondent attended:

(a) the Commonwealth filed an answer to respondent's amended PCHA petition, requesting therein, inter alia, that respondent provide particulars with respect to respondent's general claims of trial counsel's ineffectiveness;

(b) the Commonwealth, in its answer, requested that respondent's general claims of trial counsel's ineffectiveness be dismissed without a hearing absent respondent's filing a specific and legally sufficient pleading;

(c) the Commonwealth, in its answer, cited case law to support its contention that more specific pleadings were required; and

(d) the court entered an order directing respondent to file said particulars within 14 days and continued the case to July 28, 1987.

(27) Respondent did not file any particulars to his amended PCHA petition.

(28) By writ of habeas corpus dated April 7, 1987, Judge [E] directed the superintendent of the State Correctional Institution at [ ] to bring [A] to the [ ] County Prison on July 24, 1987, in order that [A] could be detained there through July 31, 1987.

(29) By notice dated April 7, 1987, which was received by respondent, Judge [E] notified respondent that a hearing had been scheduled for July 28, 1987, and that [A] would be brought down for the hearing.

(30) By letters dated April 13, 1987, and July 6, 1987, which were received by respondent, [A]:

(a) requested that respondent include in the amended PCHA petition an allegation of trial counsel's ineffectiveness in his alleged failure to preserve and argue the trial court's refusal to suppress statements made by him;

(b) requested, in the alternative, that respondent contact him and consult with him regarding this issue; and

(c) requested that respondent expedite the proceedings and contact him to apprise him of the status of the case.

(31)  Respondent did not respond to [A's] letters.

(32)  Respondent did not file any amendments to his amended PCHA petition, including an allegation of trial counsel's ineffectiveness in failing to preserve and argue the trial court's denial of a motion to suppress statements without consulting with, or even advising, [A].

(33)  By short order dated July 20, 1987, Judge [E] requested that the April 7 writ of habeas corpus be canceled because the case had been administratively relisted to August 18, 1987.

(34)  By notice dated July 20, 1987, which was received by respondent, Judge [E] notified respondent that the case was listed for August 18, 1987, and [A] would be brought down for the hearing.

(35)  By writ of habeas corpus dated July 20, 1987, Judge [E] directed the superintendent of the State Correctional Institution at [    ] to deliver [A] to the custody of [    ] County Prison officials for the August 18 hearing.

(36)  By prisoners' bring-up dated July 20, 1987, Judge [E] directed the superintendent of the [    ] Prison to bring [A] to [    ] on the first bus load of prisoners because the August 18 hearing date was a "priority listing."

(37) On July 21, 1987, [A] was mistakenly transported from [  ] to the [  ] County Prison but returned to the State Correctional Institution at [  ] on August 3, 1987.

(38) By letter dated August 10, 1987, which was received by respondent, [A] advised respondent of his "bring down" and return to [  ] and requested that respondent educate him as to "what is going on with [his] case."

(39) Respondent did not respond to [A's] August 10 letter.

(40) On August 14, 1987, the [  ] sheriff, pursuant to Judge [E] July 20 writ of habeas corpus, transported [A] from the State Correctional Institution at [  ] to the [  ] County Prison in order that [A] would be available for the August 18 hearing.

(41) On August 18, 1987, the court continued the case to December 10, 1987, for a hearing and entered a "must be tried" order because respondent was unprepared.

(42) On August 20, 1987, the [  ] sheriff returned [A] to [  ].

(43) By letter dated November 24, 1987, sent by certified mail, [A]:

(a) advised respondent that respondent had not responded to his letters over the previous six months requesting that respondent inform him of the status of his case and that respondent expedite the holding of a hearing on his PCHA petition that had been filed but remained undisposed for over one and one-half years; and

(b) again requested that respondent consult with him as to the reasons for the delay.

(44) Respondent received but did not respond to [A's] November 24 letter.

(45) On December 4, 1987, the [    ] sheriff transported [A] from [    ] to the [    ] Prison.

(46) On December 10, 1987, the case was continued to March 8, 1988, for status only because the Commonwealth needed certain notes of testimony.

(47) On December 16, 1987, the [    ] sheriff returned [A] to [    ].

(48) On March 8, 1988, the case was continued to May 12, 1988, for a hearing on the Commonwealth's motion to dismiss.

(49) By notice dated March 8, 1988, which was received by respondent, Judge [E] notified respondent that the case was relisted for May 12, 1988.

(50) At the May 12, 1988, court listing:

(a) Respondent did not appear in court;

(b) Respondent, who may have had a private criminal complaint matter before a district justice in another county the same day, did not give the PCHA matter priority, as required by Phila. Crim. Rule 805;

(c) Respondent did not make an advance application for continuance in the form and manner prescribed by Phila. Crim. Rule 810; and

(d) the court continued the hearing on the Commonwealth's motion to dismiss to July 1, 1988.

(51) By notice dated May 13, 1988, which was received by respondent, Judge [E] notified respondent that the case had been continued to July 1, 1988.

(52) By letter dated May 16, 1988, [A] requested that respondent send to him a letter advising him of the status of his case.

(53) Respondent received but did not respond to [A's] May 16 letter.

(54) By notice dated June 24, 1988, which was received by respondent, Judge [E] notified respondent that the case was relisted to June 30, 1988, and that [A] would not be brought down.

(55) On June 30, 1988, the court entertained argument on the Commonwealth's motion to dismiss and held its decision under advisement; [A] had not been brought to court.

(56) By letter dated July 23, 1988, [A] complained to the Honorable [D], president judge of the Court of Common Pleas of [  ] County, that respondent would not provide him with a report of the status of his case.

(57) By notice dated January 25, 1989, which was received by respondent, Judge [E] notified respondent that the case was listed for disposition on February 15, 1989.

(58) On February 10, 1989, the [  ] sheriff transported [A] from [  ] to the  [  ] County Prison.

(59) By order dated February 15, 1989, the court granted the Commonwealth's motion to dismiss and dismissed [A's] pro se and respondent's amended PCHA petitions.

(60) On February 17, 1989, the [  ] sheriff returned [A] to [  ].

(61) Respondent forwarded to [A] a copy of the court's one-page order of February 15 denying his request for PCHA relief.

(62) By letter dated February 20, 1989, [A]:

(a) requested that respondent file an appeal to Superior Court from the denial of his PCHA petition;

(b) requested that respondent confirm that respondent had filed an appeal and was protecting his interests; and

(c) requested that respondent provide to him a copy of the PCHA court's opinion.

(63) Respondent received but failed to respond to [A's] February 20 letter.

(64) On March 10, 1989, respondent filed a notice of appeal in the Prothonotary's Office of the Court of Common Pleas, which notice was docketed in the Superior Court on March 15, 1989, at no. [    ].

(65) On March 16, 1989, the Superior Court prothonotary sent to respondent a criminal docketing statement.

(66) On March 22, 1989, respondent completed and signed the criminal docketing statement, indicating therein that he would raise on appeal the issues of trial counsel's "competence" in having failed to file a petition to dismiss under Pa.R.Crim.P. 1100 and having failed to file a motion for severance.

(67) The Superior Court received the completed criminal docketing statement on March 27, 1989.

(68) By letter dated April 10, 1989, sent to the clerk of quarter sessions, [A] complained about respondent's not having advised him of the basis for the dismissal of his PCHA action.

(69) On April 20, 1989, the PCHA court filed its written opinion in support of its decision to dismiss [A's] PCHA action.

(70) By letter dated May 26, 1989, sent to the clerk of quarter sessions, [A] complained about respondent's not having advised him of the status of his PCHA action and requested that the clerk of quarter sessions advise [A] of the same.

(71) By follow-up letter dated July 1, 1989, [A] again requested that respondent advise him whether or not respondent had filed an appeal to the Superior Court and that respondent provide to him a copy of the PCHA court's opinion.

(72) Respondent received but failed to respond to [A's] July 1 letter.

(73) Respondent failed to notify [A] that respondent had filed an appeal to Superior Court, to provide to [A] a copy of the PCHA court's opinion and to communicate with him in any fashion.

(74) By notice dated October 10, 1989, which was received by respondent, the Superior Court prothonotary notified respondent that his brief was due on or before November 19, 1989.

(75) Respondent failed to file a brief or to take the necessary steps to withdraw if respondent were unwilling to complete the assignment for any reason.

(76) By order dated December 19, 1989, which was received by respondent, the Superior Court dismissed [A's] appeal because of respondent's failure to file a brief.

(77) Under cover of a letter dated December 19, 1989, sent to respondent with a courtesy copy to [A], the Superior

Court prothonotary served respondent with a copy of the dismissal order and informed respondent that a certified copy of the order and the record would be sent to the Court of Common Pleas in due course.

(78) Respondent received the Superior Court order but did not contact [A] to discuss the Superior Court's order dismissing his appeal or to take any action to have [A's] appellate rights reinstated.

(79) On January 23, 1990, the Superior Court prothonotary returned the record to the jurisdiction of the [    ] Court of Common Pleas.

(80) Under cover of a letter dated January 26, 1990, to [A], [F], Appeals Unit of the [    ] Court of Common Pleas Trial Division:

(a) forwarded to [A] a copy of the Superior Court's order dismissing the appeal;

(b) informed [A] that if he wished to pursue his appellate rights, he must notify the appeals unit within 30 days from the date of the letter;

(c) informed [A] that if he responded affirmatively, his case would be placed on a list to have an attorney appointed to represent him in restoring his appellate rights; and

(d) informed [A] that if he did not respond to the letter, then his only recourse would be to file his own pro se PCHA petition and no additional action would be undertaken by the appeals unit.

(81) In July 1990, [A] filed a second PCHA petition.

(82) Following his conviction for robbery at nos. [    ], May Term, 1982, [B] filed a petition under the Post Conviction Hearing Act in the Court of Common Pleas of

[    ] County on May 29, 1986, alleging, inter alia, that trial counsel was ineffective for failing to inform him of his right to file a petition for allocatur with the Supreme Court of Pennsylvania.

(83) On March 30, 1987, the PCHA court denied [B's] PCHA petition and on April 3, 1987, [B] filed a notice of appeal to the Superior Court of Pennsylvania, which was docketed on April 7, 1987, at [    ].

(84) By notice dated May 1, 1987, which was received by the respondent, the Honorable [D] appointed respondent to represent [B] on appeal and notified respondent that, pursuant to Pa.R.Crim.P. 316, the appointment was "not transferable and [was] effective from time of appointment through and including appeals, to the highest appellate state court, including new trials, if any."

(85) Respondent filed a timely brief on September 8, 1987.

(86) By letter dated January 7, 1988, which was received by respondent, [B] requested that respondent send to him a copy of the brief that respondent had filed in Superior Court.

(87) By memorandum opinion filed January 14, 1988, a panel of the Superior Court held that trial counsel was ineffective for failing to advise [B] of his right to file a petition for allocatur with the Pennsylvania Supreme Court, and granted [B] leave to file a petition for allocatur nunc pro tunc to the Supreme Court of Pennsylvania.

(88) Respondent knew, or reasonably should have known, that [B] wished to file a petition for allocatur nunc pro tunc to the Supreme Court, because that was

one of the grounds in which [B] requested relief from the Superior Court.

(89) Under cover of a handwritten note with no date, respondent forwarded to [B], who was incarcerated at the State Correctional Institution at [    ], a copy of the Superior Court's memorandum opinion and requested that [B] "[p]lease contact [respondent] as soon as possible."

(90) By letter dated January 25, 1988, [B] requested that respondent file a petition for allocatur to the Supreme Court.

(91) Respondent failed to file a petition for allocatur nunc pro tunc to the Supreme Court of Pennsylvania, thereby unilaterally ending the appeal process without consulting with, or obtaining the consent of, [B].

(92) By letter dated March 24, 1989, [B] requested that respondent advise him of the status of his appeal.

(93) Respondent received but did not respond to [B's] March 24 letter.

(94) [B] then wrote to the Office of the Prothonotary of the Supreme Court of Pennsylvania to determine the status of his appeal.

(95) By letter dated May 19, 1989, Deputy prothonotary, [G], advised [B] that the Supreme Court case index did not list any filings on his behalf.

(96) By letter dated August 22, 1989, sent certified mail return receipt requested and received by respondent on August 28, 1989, [B] again requested that respondent inform him of the status of his case and of the efforts that respondent was undertaking on his behalf.

(97) Respondent did not respond to [B's] August 22 letter or to communicate with him in any fashion.

(98) On February 6, 1989, [C] filed an appeal to the Superior Court of Pennsylvania from his criminal conviction in the Court of Common Pleas of [    ] County at nos. [    ], July Term, 1985, said appeal being docketed at no. [    ].

(99) By notice dated March 29, 1989, which was received by the respondent, the Honorable [D] and the Honorable [H] notified respondent that he was being appointed to represent [C] on his appeal to Superior Court and that, pursuant to Pa.R.Crim.P. 316, the appointment was "not transferable and [was] effective from the time of appointment through and including appeals to the highest appellate state court, including new trials, if any."

(100) On April 18, 1989, the Superior Court received a copy of the March 29 appointment letter.

(101) On April 20, 1989, the Superior Court prothonotary sent to respondent a criminal docketing statement by first class mail and in the ordinary course of court business, but respondent failed to complete and return the criminal docketing statement to Superior Court.

(102) Respondent did not open a file or obtain and review the trial record.

(103) Respondent did not contact [C] to advise him of his appointment or to discuss with him the issues pertaining to his appeal.

(104) By notice of briefing schedule dated June 30, 1989, sent to respondent by first class mail, the Superior Court prothonotary:

(a) advised respondent that the trial court record had been filed in Superior Court; and

(b) advised respondent that pursuant to Pa.R.A.P. 2185(a), respondent's brief had to be filed in Superior Court on or before August 8, 1989.

(105) Respondent did not file a brief.

(106) By order dated September 14, 1989, the Superior Court dismissed [C's] appeal because of respondent's failure to file a brief.

(107) Under cover of a letter dated September 14, 1989, to respondent with a courtesy copy to [C], the Superior Court prothonotary served respondent with a copy of the Superior Court's September 14th order and notified respondent that the record would be sent to the [    ] County Clerk of Courts in due course.

(108) Respondent failed to contact [C] to discuss the dismissal of [C's] appeal or to take any action to secure the reinstatement of [C's] appellate rights.

(109) On October 23, 1989, the Superior Court prothonotary returned the record to the jurisdiction of the [    ] Court of Common Pleas.

(110) By letter dated October 27, 1989, [F], Appeals Unit of the [    ] Court of Common Pleas Trial Division, notified [C] that if he wanted to pursue his appellate rights, he must notify the appeals unit within 30 days from the date of the letter, at which time his case would be placed on a list to have an attorney appointed to represent him in restoring his appellate rights.

(111) By letter dated October 30, 1989, [C] notified the Appeals Unit of the Court of Common Pleas Trial Division that he wished to pursue his appellate rights.

(112) Subsequently, the appeals unit placed [C's] case on a list of cases for appointment of counsel for the

sole purpose of taking whatever steps are necessary to reinstate [C's] appellate rights.

(113) Based on the current backlog of cases awaiting appointment of counsel to secure reinstatement of appellate rights, the list upon which [C's] case has been placed will not receive an appointment of counsel until approximately November 1990.

(114) Under procedures in effect in the Court of Common Pleas of [ ] County, after newly-appointed counsel completes her task of securing the reinstatement of the appellate rights of all defendants contained in a particular list, other counsel will be appointed to brief and argue [C's] appeal.

(115) Respondent has admitted that he did not keep [A] informed of the status of his case.

(116) Respondent has admitted that his conduct was prejudicial to [C] and to the administration of justice.

(117) Respondent has admitted that his conduct was prejudicial to [B] and to the administration of justice.

(118) Respondent was admitted to practice law in the Commonwealth of Pennsylvania on April 1, 1960.

(119) During most of the relevant time periods, respondent maintained a law office at [ ], but respondent's current office for the practice of law is located at [ ].

(120) Respondent spent 21 years with the School District of [ ] and nine years in the law department in the city of [ ].

(121) Respondent is active in various community activities and his synagogue.

(122) Respondent has no history of previous discipline.

(123) Respondent has been cooperative once advised of the disciplinary complaint.

(124) Respondent was overwhelmed in his sole practitioner role.

(125) Respondent has taken various measures to ensure that neglect of a client's matter will not occur in the future.

## DISCUSSION

The findings of fact are uncontroverted and clearly show that respondent has violated the following: Disciplinary Rule 1-102(A)(5) requiring that a lawyer shall not engage in conduct that is prejudicial to the administration of justice; Disciplinary Rule 6-101(A)(2) and (3) requiring that a lawyer not handle a legal matter without preparation adequate in the circumstances and neglect a legal matter entrusted to him; Disciplinary Rule 7-101(A)(1) prohibiting a lawyer from intentionally failing to seek the lawful objectives of his client through reasonably available means; Rule of Professional Conduct 1.1 requiring a lawyer to provide competent representation to a client; Rule of Professional Conduct 1.2(a) requiring a lawyer to abide by the client's decision concerning the objectives of representation and to consult with the client as to the means by which they are to be pursued; Rule of Professional Conduct 1.3 requiring a lawyer to act with reasonable diligence and promptness in representing a client; Rule of Professional Conduct 3.2 requiring a lawyer to make reasonable efforts to expedite litigation consistent with the interests of his client; and Rule of Professional Conduct 8.4(d) stating that it is professional

misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

Respondent's acts of neglect in failing to contact his clients, failing to follow the advice of his clients, failing to file various petitions, particulars and briefs on behalf of his clients and failing to file a petition for allocatur nunc pro tunc to the Supreme Court of Pennsylvania cannot be excused nor rationalized. The petitioner has proven that respondent violated the above-mentioned Disciplinary Rules and Rules of Professional Conduct.

The respondent has, however, offered various evidence of mitigating factors that the committee will consider in deciding the appropriate sanction to be imposed. The respondent has fully cooperated with the Disciplinary Counsel in this proceeding. Respondent has also admitted that he neglected these matters and has taken steps to make sure this never happens again. In addition, the respondent has practiced law for many years with no history of previous discipline and is extremely active in community activities. Having admitted numerous violations of the Disciplinary Rules and Rules of Professional Conduct the respondent is subject to the discipline enumerated below.

## CONCLUSIONS OF LAW

The committee concludes that petitioner has carried its burden of proof and that respondent's conduct, as discussed above, violated Disciplinary Rules 1-102(A)(5), 6-101(A)(2) and (3), 7-101(A)(1), (2) and (3) and Rules of Professional Conduct 1.1, 1.2(a), 1.3, 3.2 and 8.4(d).

## RECOMMENDED DISPOSITION

The committee finds that respondent should be subject to a private reprimand without probation. While petitioner has recommended at least a two-month suspension from the practice of law, the committee believes that such a disposition is not warranted under these circumstances. Respondent, who has an otherwise unblemished record of practice in excess of 30 years and has a distinguished record of community service, has admitted his mistakes and will now accept the appropriate consequences, having taken steps to assure no recurrence.

## ORDER

And now, July 26, 1991, upon consideration of the report and recommendation of Hearing Committee [    ] filed June 4, 1991; it is hereby ordered that the said [respondent] of [    ] County be subjected to private reprimand by the Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(a)(5) of the Pennsylvania Rules of Disciplinary Enforcement. Costs are to be paid by the respondent.

Mr. Kerns dissented and would recommend informal admonition.